**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                )
**JOHN R. MILLER,**             )
*Plaintiff*,                    )          **CIVIL ACTION**
                                )          **NO. 08-40184-TSH**
**vs.**                         )
                                )
**MICHAEL J. ASTRUE,**          )
**COMMISSIONER, SOCIAL**        )
**SECURITY ADMINISTRATION,)**
*Defendant*.                    )
_____)


**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO
REVERSE OR REMAND, AND DEFENDANT'S CROSS MOTION FOR AN ORDER
AFFIRMING THE DECISION OF THE COMMISSIONER**

**March 30, 2010**

**HILLMAN, M.J.**

**Nature of the Proceeding**

By Order of Reference dated December 5, 2008, (Docket No. 6), Plaintiff's Motion to

Reverse or Remand the Decision of the Commissioner, (Docket No. 14), and Defendant's Cross-

Motion for an Order Affirming the Decision of the Commissioner, (Docket No. 18), were

referred to me for disposition.  For the reasons that follow, Plaintiff's motion is denied and

Defendant's motion is granted.

**Nature of the Case**

This case is here on appeal from a final administrative decision of the Commissioner of

the Social Security Administration ("SSA") denying Plaintiff John Miller's ("Mr. Miller" or

"Plaintiff") applications for Social Security Disability Insurance ("SSDI") and Supplemental

Security Income ("SSI").  Mr. Miller appealed the Commissioner's decision claiming it is not

supported by "substantial evidence" under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Specifically, he

contends the Administrative Law Judge ("ALJ") inappropriately ignored testimony from a

vocational expert who explained that Mr. Miller's physical impairments, if coupled with fatigue

and possible psychiatric symptoms, would prevent his performance of any light and unskilled

work, rendering Mr. Miller disabled.  *See* (Plaintiff's Memorandum ("Pl.'s Mem."*)*, 14-15).

## Procedural History

Mr. Miller filed applications for SSDI and SSI benefits on September 27, 2006 due to

alleged disabilities accrued on January 1, 1999.  (Pl.'s Mem., 3).  The SSA denied Mr. Miller's

applications on December 4, 2006.  *Id.*  Mr. Miller subsequently filed a timely request for

reconsideration by a federal ruling official, who denied his request on October 15, 2007.  *Id.*  Mr.

Miller then requested a hearing on his claim before an Administrative Law Judge ("ALJ"), who

eventually heard the matter and issued a decision unfavorable to Mr. Miller on April 22, 2008.

*Id.*  Mr. Miller next petitioned the SSA's Decision Review Board, which affirmed the ALJ's

decision on July 24, 2008, making it the final administrative command of the SSA

Commissioner.  *See id.*; *see also generally* (Tr. 1-3).  Having exhausted all administrative

recourse, Mr. Miller filed a timely motion to reverse or remand that decision under 42 U.S.C. §§

405(g) and 1383(c)(3).  (Pl.'s Mem., 3).  Defendant opposed the motion, moving to affirm.

## Background

1.       *Personal, Educational, and Occupational History*

Mr. Miller was born on September 8, 1960 and is a former service member.[1]  (Pl.'s Mem., 3); he was 45 years old in September, 2005 (the month in which his insured status, for the purpose of the Title II disability insurance program, expired) and 47 years old in April 2008 (when the ALJ denied his applications) (Tr. 61, 112).  Mr. Miller obtained a GED in 1977 (Tr. 147).  He was convicted as an accessory to murder in 1978 and spent approximately six years in prison for the offense, during which he obtained his Graduate Equivalency Diploma (GED). (Pl.'s Mem., 4).  Mr. Miller also took college-level courses in computer science and business while in prison.  (Def.'s Mem., 2).  He was released from prison in 1985 and worked consistently thereafter.  (Pl.'s Mem., 4).  He has worked as a truck driver, store manger for a box company, odd jobs man (for a bar and sports league), seller of liturgical publications, modular housing salesman, and home siding installer (Tr. 11, 904).  He was an administrative assistant for a Texas company from 1994 until 1996, when the company closed.  *Id.*  He then worked as a sales representative from 1996 until 1999-2000, when he became disabled.  *Id.*

Although Mr. Miller testified that he had not worked at all since 1999, (Tr. 21), he admitted to have played darts professionally after 1999, (Tr. 22), and certain medical records suggest he was employed as a temporary construction worker on or about June 2003.  (Tr. 515). Similar records also show that Mr. Miller worked 20 to 30 hours per week in a construction-related job in 2004, until approximately April 2005.  (Tr. 455, 463, 473).  He continued working

---

[1] Claimant enlisted in the U.S. Navy but was honorably discharged prematurely due to a visual disorder.  (Tr. 19).

as a power washer for some time thereafter.  *Id.;* (Tr. 806).  From 2005 until about April 2007,

Mr. Miller continued playing darts professionally and competitively.  (Tr. 650, 699, 904).[2]

2.    *Medical History*

Mr. Miller raised various complaints of pain or discomfort related to medical issues, but

test results were often contradictory.[3]  In 1998, Mr. Miller tested positive for Hepatitis C

possibly due to prior chronic drug use.  (Tr. 242, 299).  Although a 1999 test revealed unusual

blood count abnormalities, his hematologist did not find a primary hematological disorder

requiring treatment.  (Tr. 250-251).  A 2000 medical examination reflected largely normal

clinical findings.  (Tr. 247-248).  In a 2001 psychiatric examination, Dr. Trimble noted

significant symptoms of depression.  (Tr. 394-398).  In 2004, Mr. Miller fell and injured his

knee, and a subsequent MRI showed bruising of the medial tibia.  (Tr. 854-855).  He continued

to complain of depression and fatigue in late 2004.  (Tr. 766-769).  Medical consultation notes

dated October 2004 showed Mr. Miller was being treated for polycythemia vera.  (Tr. 766).  The

---

[2]     A progress note monitoring Mr. Miller's condition states that as of December 2006, Mr. Miller "is focused on making a decision to leave his exceptionally profitable, enjoyable, and esteem-building avocation of professional darts playing for a 'real job' to meet the needs of his new wife."  (Tr. 650).  Another progress note dated April 2007 suggested Mr. Miller continued "throwing darts (on championship team)."  (Tr. 699).

[3]     The hearing record reflects the following summary of Claimant's medical history and impairments: Hepatitis A: Diagnosed in 1999
   a.   Chronic Hepatitis C:  Diagnosed in 1999
   b.   Polycythemia vera:  Condition would cause rectal bleeding and require regular medical bleeding. Originally treated with interferon and ribavarin.  He is routinely phlebotomized every month. [Tr. Page 894]
   c.   Depression and Anxiety:  The Boston Veterans Administration Medical Center diagnosed the claimant in November 2007 with severe depression in accordance with the Beck Depression Inventory – II assessment of depressive symptoms.  [Tr. Pages 903-909]
   d.   Bursitis:  trauma to the left elbow resulted in swelling and pain.  [Tr. Pages 695-696]
   e.   Torn Meniscus:  Torn medial meniscus of the left knee [Tr. Pages 28-30]
(Pl.'s Mem., 5).

same notes recorded Mr. Miller's past psychiatric history involving treatment for depression. *Id.*

A liver scan, performed two months later, showed nothing abnormal.[4] (Tr. 740).

In September 2005, Mr. Miller was concerned about his hepatitis treatment, indicating

that he would refuse treatment if it affected his liver. (Tr. 446). He was given fish oil tablets

and dietary restrictions. (Tr. 447). Mr. Miller continued to complain of fatigue several months

later, as well as intermittent parasthesias in his arms. (Tr. 605). However, one of his doctors

noted that Mr. Miller did not have a classic case of polycythemia vera. (Tr. 607). Additionally,

a liver-spleen scan yielded normal results without signs of spleen enlargement. *Id.*

A March 2007 psychological evaluation by Dr. Robert Holloway showed both positive

and negative results in memory testing, reflecting good memory with information presented in a

sequential manner and poor memory when processing units of auditory and visual stimuli. (Tr.

667-671). Mr. Miller also complained of memory difficulty, decreased hearing in left ear,

abdominal discomfort, and was said to have generalized malaise. (Tr. 673). On examination,

however, Mr. Miller showed normal gait, musculoskeletal and neurological findings. (Tr. 673-

674).

In 2007, Mr. Miller fell and injured his left elbow, but a subsequent May examination

and x-rays showed elbow tenderness, swelling, and no fractures. (Tr. 695). Mr. Miller again

renewed his complaints regarding failing memory, (Tr. 893), and underwent a brain MRI in

August 2007, which showed no atrophy and non-specific white matter changes. (Tr. 884). Later

testing in November 2007 for cognitive impairments revealed minimal problems, and results

---

[4]     The corresponding report noted Mr. Miller's liver was "normal in size, location, and echotexture," and "no evidence of intrahepatic mass or intrahepatic ductal dilatation" was found either. (Tr. 740). In addition, his "right kidney [was] normal in size, location, and echotexture" as well. *Id.*

from a formal examination showed "preserved cognitive functioning across neuropsychological domains including attention, generative naming, word-finding, memory and executive functioning." (Tr. 907-908). Mr. Miller did show weakness in remembering non-verbal information, (Tr. 908), but no significant memory deficiencies. (Tr. 908).[5]

In November 2006, state agency psychologist, Dr. Langer, a state agency psychologist who reviewed plaintiff's records, found that Mr. Miller's medical record did not establish the existence of a medically severe mental impairment. (Tr. 573, 583, 585). State agency reviewing physician, Dr. Girgis, concurred that Mr. Miller's case "considered no severe impairment for his medical complaints." (Tr. 587). In September 2007, SSA neurological consultant, Dr. Greenberg, reviewed Mr. Miller's records and found "no medically determinable neurological impairment." (Tr. 899). Internal medicine specialist, Dr. Ipakachi, did not think that Mr. Miller's polycythemia or hepatitis C were severe impairments, and found no evidence of cirrhosis. (Tr. 900). Finally, Dr. Unger likewise concluded that Mr. Miller suffered no more than mild and non-severe limitations despite his adjustment and affective disorders. *See* (Tr. 901).

## Discussion

1.    *Jurisdiction and Standard of Review*

Mr. Miller has properly invoked this Court's jurisdiction. 42 U.S.C. § 405(g) expressly permits judicial review of the SSA Commissioner's final decision upon filing a timely action in

---

[5]    During an assessment of depressive symptoms, Mr. Miller's examiner found that his pattern of responses were "indicative of severe depressive symptoms." (Tr. 907). Also, "[o]n a task involving working memory and planning and organization, Mr. Miller performed in the impaired range," although his examiner said Mr. Miller's deficient performance was of minor import in light of superior performance in parallel examinations. (Tr. 907).

district court.  The ALJ's decision became the Commissioner's final command when the SSA's Decision Review Board upheld the ALJ's decision denying Mr. Miller's application for benefits. Mr. Miller subsequently filed a timely action against the Commissioner requesting review.

2.      *Standard of Review*

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing.  42 U.S.C. § 405(g).  The ALJ's finding on any fact shall be conclusive if it is supported by substantial evidence and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept if as adequate to support his conclusion," even if the record could justify a different conclusion.  *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *see also Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).  In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the court, to find facts, decide issues of credibility, draw inference from the record, and resolve conflicts in the evidence.  *Irlanda Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).  Reversal is warranted only if the ALJ committed a legal or factual error in evaluating Mr. Miller's claim, or if the record contains no "evidence rationally adequate… to justify the conclusion" of the ALJ.  *Roman-Roman v. Commissioner of Social Security*, 114 Fed. Appx. 410, 411 (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

**2.**      *Standard for Entitlement to Disability Insurance Benefits*

In order to qualify for disability insurance benefits, a claimant must demonstrate that he is disabled within the meaning of the Social Security Act. *Deblois v. Secretary of Health and*

*Human Servs.*, 686 F.2d 76, 79 (1ˢᵗ Cir. 1982).  The Act defines the term "disability" as the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  The impairment(s) must be severe enough to prevent the claimant from

performing not only his past work, but any substantial gainful work existing in the national

economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the

regulations promulgated under the statute.  20 C.F.R. § 404.1520.  The First Circuit has

described the analytical sequence as follows:

> First, is the claimant currently employed?  If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a 'severe impairment' … mean[ing] an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions[?]'  If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in Appendix 1 [of the Social Security regulations]?  If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled… If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3), the [ALJ] goes on to ask the fourth question:
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past?  If not, he is not disabled.  If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy?  If so, he is disabled; if not, he is not disabled.

*Goodermote v. Sec'y of Health and Human Servs.*, 690 F.2d 5, 6-7 (1ˢᵗ Cir. 1982).

The burden of proof is on the applicant as to the first four steps of the analysis. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). At the fifth step of the analysis, the burden shifts to the Commissioner to show that the claimant is capable of performing jobs available in the national economy. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). In making that determination, the ALJ must assess the claimant's Residual Functional Capacity (RFC) in combination with vocational factors, including the claimant's age, education, and work experience. 20 C.F.R. § 404.1560(c). The RFC assessment considers all relevant medical and non-medical evidence, including medical evidence of examining and non-examining physicians and the testimony of the claimant and others. *Rivera v. Chater*, 943 F.Supp 90, 93(D.Mass. 1996). Mr. Miller argues that the Commissioner did not meet his burden of proof at step five of the disability determination analysis.

3.    *The ALJ's Findings*

On April 22, 2008, the ALJ concluded that Mr. Miller had not been under a disability within the meaning of the Social Security Act from 1999 through 2008. (Tr. 60). Among other facts, the ALJ principally found that:

1.   The claimant met the insured status requirements of the Social Security Act through September 30, 2005.
2.   The claimant had not engaged in substantial gainful activity since January 1, 1999, the alleged onset date . . . .
3.   The Claimant has the following severe impairments: polycythemia vera, history of hepatitis C and an adjustment disorder . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

5. [T]he claimant has the residual functional capacity to perform light work . . . including frequently lifting ten pounds, occasionally lifting twenty pounds and sitting, standing and walking six hours during an eight-hour workday, but would be limited to no more than occasional climbing of ramps and stairs, no more than occasional balancing, stooping, kneeling, crouching and crawling, would never be able to climb ladders, ropes or scaffolds, would be incapable of operating left foot and leg controls . . . [and] working in the food service industry, would need to avoid all heights and would be limited to simple, unskilled tasks with no more than occasional co-worker or general public contact.

6. The claimant is unable to perform any past relevant work . . . .

7. The Claimant was born on September 8, 1960 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date . . . .

8. The claimant has at least a high school education and is able to communicate in English . . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 1999 through the date of this decision . . . .

12. Although the Federal Reviewing Official's decision was not considered to be

> evidence, the undersigned does not agree with the conclusion on disability or
>
> all the substantive findings the FedRO made on Title II and Title XVI claims .
>
> . . .

(Tr. 61-65) (emphasis in original); *see also generally* (Tr. 59-66) (reviewing Mr. Miller's

submission and finding no disability under the statute after applying relevant law and

regulations).  The ALJ found Mr. Miller was able to do light work involving simple unskilled

tasks (subject to a number of other non-exertional limitations) and relied on Rule 202.21,

supplemented by testimony from a vocational expert, as to the existence of work compatible with

Mr. Miller's particularized abilities and limitations (Tr. 65, also Tr. 40).

4.      *Plaintiff's Objections*

        Mr. Miller raises several challenges to the ALJ's decision: 1) that the ALJ ignored a

November 2007 determination by a panel of Veterans Administration examining doctors that

Miller has severe depression (Pl.'s Mem., 12-13); 2) that theALJ ignored testimony from the

vocational expert; and 3) the ALJ improperly ignored his complaints of knee pain and bursitis.

*Id.* at 16-17.  The Court's standard of review is not whether the record evidence could support a

particular finding, but whether substantial evidence exists to support the ALJ's findings.  *See*

*Roman-Roman*, 114 Fed. Appx. at 411.  With this standard in mind, the Court will review the

ALJ's findings.

**Discussion**

        Mr. Miller contends that the ALJ did not factor the November 2007 determination by a

panel of Veterans Administration examining doctors that he has depression into his analysis of

step five.  (Pl.'s Mem., 12).  Rather than ignore this evidence, the ALJ specifically noted it (Tr. 63), and the ALJ's assessment of Mr. Miller's RFC took this and other evidence of mental impairment into account.  The ALJ did so by imposing significant limitations of mental functioning into his determination of Mr. Miller's ability to perform numerous light, unskilled jobs.

Specifically, the ALJ determined in step four that Mr. Miller was not capable of performing any past relevant work.  Moving on to the step five analysis, the ALJ then concluded that Mr. Miller has a residual functional capability of performing light, unskilled work (as defined in 20 C.F.R. 404.1567(b) and 416.967(b) but with some limitations.[6]  In determining if Mr. Miller could perform other jobs, the ALJ applied Mr. Miller's RFC, along with the other vocational factors.

Mr. Miller next argues that the ALJ did not take into account the vocational expert's testimony that a person with the same physical impairments as Mr. Miller, but additional mental impairments, would be disabled.  The ALJ presented the vocational expert with a hypothetical person that contained the same physical restrictions, as well as the following mental impairments: has secondary problems with symptoms of fatigue, weakness, and possible psychiatric symptoms, which would all impair the ability to attend, persist, pace and concentrate to such as extent that the individual would have the potential of being off task for at least 25 percent of the

---

[6]       The ALJ found that plaintiff could do: light work as defined in 20 CFR 404.1567(b) and 416.967(b) including frequently lifting ten pounds, occasionally lifting twenty pounds and sitting, standing and walking six hours during an eight-hour workday, but would be limited to no more than occasional climbing of ramps and stairs, no more than occasional balancing, stooping, kneeling, crouching and crawling, would never be able to climb ladders, ropes or scaffolds, would be incapable of operating left foot and leg controls, would in incapable of working in the food service industry, would need to avoid all heights and would be limited to simple, unskilled tasks with no more than occasional coworker or general public contact.

workday, how would that affect your testimony if at all?"  Tr. at 40.  The vocational expert

responded that a person with those limitations would not be able to work.  Id.  The mental

limitations that ALJ presented the vocational expert with were the same physical and mental

limitations that the record suggests Mr. Miller possesses.  Thus, the ALJ asked the vocational

expert how he would decide based on all of the mental and physical medical diagnoses of Mr.

Miller that were submitted.  Thus, the ALJ included all of his residual functional capacity

conclusions, including those regarding mental limitations, in his hypothetical question to the

vocational expert.  As credibility determinations are reserved for the Commissioner, this Court

can only overturn or remand his determinations if they are not supported by substantial evidence.

The testimony by the vocational expert that produced a conclusion of disability was based on

medical conclusions that the ALJ had already evaluated and to which he had assigned reduced

weight.

Mr. Miller's next argues that the ALJ ignored his complaint of knee pain and bursitis.

Citing 20 CFR §§404.1520 & 404.1529, Mr. Miller correctly noted that it is required that the

SSA "consider all of your symptoms, including pain, and the extent to which your symptoms can

16 Case 4:08-cv-40184-TSH Document 15 Filed 07/06/09 Page 16 of 19 reasonably be accepted

as consistent with the objective medical evidence and other evidence."  (Pl.'s Mem., 17).  These

cited regulations require that the ALJ consider each of a claimant's medical conditions and

decide whether each singularly or in combination impacts their ability to work.

The medical evidence on the record and Mr. Miller's activity level and ability to work at least through April 2007 fails to show an severe, ongoing medical problem.[7]  For example, medical assessments show Mr. Miller's hepatitis was monitored and treated, and x-rays of his elbow and knee injuries reveal no fractures.  Likewise, an MRI following Mr. Miller's complaints of bursitis from a fall in 2007 showed only a bone bruise.  Additionally, the record suggests Mr. Miller worked at least part-time in construction related jobs from 1999 through 2007, and Mr. Miller's own testimony regarding professional dart-throwing is similarly consistent with the ALJ's affirmative finding of employability.  (Tr. 64).  In light of this, and considering the expert medical evidence in the record, it is clear that Mr. Miller remained able to do at least some light work activity during this period.

The record evidence supports the ALJ's affirmative finding in his Step 5 analysis of potential employability in spite of Mr. Miller's physical and mental limitations.  Here, the ALJ's decision was supported by substantial evidence, as it was supported by the assessments of reviewing physicians, and a reviewing psyciatrist and psychologist and also included considering of other medical records and assessments, Mr. Miller's testimony, and expert testimony regarding Mr. Miller's employability.  Notably in this case, no treating or examining source had ever indicated that Mr. Miller is more limited than the ALJ found him to be.

Whatever demeanor and credibility determinations are to be subsequently made by the ALJ, they "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered" in making said determinations.  *Beaulieu v. Sec'y of*

---

[7]       Plaintiff here needed to prove that his medically established impairments caused limitations that remained at a "severe" level for at least twelve continuous months. See 20 C.F.R. §§ 404.1509 and 404.1522(b) (2008); see also 20 C.F.R. §§ 416.909 and 416.922(b) (2008). Plaintiff did not present evidence of either a severe knee problem or of shoulder problems lasting at least twelve months.

*Health and Human Servs.*, 1988 U.S. Dist. LEXIS 12758 *11 (D. Mass., October 31, 1988).

Remembering that factual inferences, credibility determinations, and resolutions of conflicts in

the evidence are reserved to the Commissioner, it is ultimately his prerogative to determine

whether Mr. Miller suffers from multiple mental impairments. *Ortiz*, 955 F.2d at 769. When

considering the record as a whole, there is sufficient evidence to show that the ALJ considered

all of Mr. Miller's various medical allegations individually and as a whole.

      The record evidence supports the ALJ's affirmative finding in his Step 5 analysis of

potential employability in spite of Mr. Miller's physical and mental limitations. Here, the ALJ's

decision was supported by substantial evidence, as it was supported by the assessments of

reviewing physicians, and a reviewing psyciatrist and psychologist and also included considering

of other medical records and assessments, Mr. Miller's testimony, and expert testimony

regarding Mr. Miller's employability. Notably in this case, no treating or examining source has

ever indicated that Mr. Miller is more limited than the ALJ found him to be. Under SSA's

regulations, the expert opinions of medical reviewers may amount to substantial evidence where

they represent a reasonable reading of the entirety of the relevant medical evidence. 20 C.F.R. §§

404.1527(f) and 416.927(f)(2008). Even in cases where there are contrary opinions by treating

sources, the ALJ may nonetheless assign greater weight to the opinion of a reviewing physician,

so long as he has an adequate basis for doing so. Arroyo v. Secretary of Health and Human

Services, 932 F.2d 82, 89 (1st Cir. 1991).

      Because Mr. Miller has failed to demonstrate that the ALJ's determination is not

supported by substantial evidence, the decision that Mr. Miller is not disabled under section

1614(a)(3)(A) of Social Security Act should be affirmed. *See Frustaglia*, 829 F.2d. At 195.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Docket No. 14) is **<u>DENIED</u>**, and Defendant's Cross-Motion for an Order Affirming the Decision of the Commissioner (Docket No. 18) is **<u>GRANTED</u>**, consistent with this opinion.

/s/Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE